# In the United States Court of Federal Claims

No. 26-861
(Filed Under Seal: August 17, 2026)
Reissued: August 27, 2026*

| | |
|---|---|
| MINBURN TECHNOLOGY GROUP LLC, | ) |
| Plaintiff, | ) |
| v. | ) |
| UNITED STATES, | ) |
| Defendant, | ) |
| DELL FEDERAL SYSTEMS L.P., | ) |
| Defendant-Intervenor | ) |

*Alexander B. Ginsberg*, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, D.C., for plaintiff. With him on the briefs were *Robert C. Starling* and *Noah B. Curtiss*.

*Tayna B. Koenig*, Senior Trial Counsel, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., for defendant. With her on the brief was *Ana F. Smith*, Department of the Navy, Information Warfare Center Pacific, and *J. Eric Anderson*, Office of Intellectual Property, 36000, Naval Information Warfare Center Pacific.

*Craig Alan Holman*, Arnold & Porter Kaye Scholer LLP, Washington D.C., for defendant-intervenor. With him on the brief were *Thomas A. Pettit*, *Roee Talmor*, *Adrienne Jackson*, and *Kristina Lorch*.

## OPINION AND ORDER

***SMITH*, Senior Judge**

In this post-award bid protest, plaintiff Minburn Technology Group, LLC ("Minburn") challenges, in part, the United States Navy's ("the Navy") award of a Federal Supply Schedule ("FSS") contract for the procurement of Microsoft products and services to defendant-intervenor Dell Federal Systems L.P. ("Dell Federal"). *See generally* Second Am. Compl., ECF No. 40. The

* An unredacted version of this Opinion was filed on August 17, 2026. *See* ECF No. 47. The Court provided the parties with the opportunity to submit proposed redactions. *See* Joint Status Report, ECF No. 52. The parties confirmed that the full Opinion may be filed without redactions.

parties agreed to resolve this matter on the administrative record. *See* Scheduling Order, ECF No. 28. Minburn now moves to supplement the record and for the Court to take judicial notice of certain facts and documents. Pl.'s Mot. to Supp. the Administrative R. & for Judicial Notice, ECF No. 33. While responding to Minburn's motion, Dell Federal moved to dismiss Counts II and III in Minburn's second amended complaint under Rule 12(b)(6) of the Court of Federal Claims ("RCFC"). *See* Intervenor's Resp. Br. and Mot. to Dismiss, ECF No. 44. For the following reasons, the Court **GRANTS-IN-PART and DENIES-IN-PART** Minburn's motion, ECF No. 33. The Court also **DENIES** Dell-Federal's motion to dismiss, ECF No. 44.

## I. BACKGROUND

On May 5, 2026, the Navy issued Solicitation No. N66001-26-Q-0051-0002 that sought a comprehensive blanket-purchase order agreement ("BPA") under the FSS program for reselling Microsoft software licenses, cloud subscriptions, and other products. *See* Administrative R. ("AR") at 573. Referred to as Enterprise Software Agreement ("ESA") II, the BPA features five annual ordering periods that would run until April 30, 2031. *Id.* at 549. ESA II would run under the General Service Administration's ("GSA") FSS program to Multiple Award Schedule ("MAS") contract holders. *Id.* at 549.[1]

Relevant to the parties' motions, Solicitation Attachment 2 lists all Microsoft products under ESA II. *See* Tab 11b. The Solicitation instructed offerors that "[a]ll products offered must be under your GSA MAS" contract. *Id.* at 573. To demonstrate product inclusion on their GSA schedule, resellers were required to submit "a copy of your GSA approved Price List." *Id.* As an eligibility criterion for award, the Navy mandated that all "Microsoft products listed under Attachment #2 . . . must be on the Reseller's FSS contract." *Id.* at 574. In addition, offerors would certify that "all products listed in Attachment 2 are currently included on your GSA Multiple Award Schedule (MAS) Contract." *Id.* at 570.

In its proposal, Dell Federal attached its "Authorized Federal Supply Schedule Pricelist." *See id.* at 635. Within its FSS pricelist, Dell Federal represented that its Cloud-Computing Services pricelist "consists of multiple line items. It will be provided via email upon request." *Id.* at 705. The company's Third Party Product pricelist stated a similar instruction, noting thousands of line items existed on the list. *Id.* at 712. Other documents submitted with Dell Federal's proposal included its "GSA Microsoft Price List" and "GSA Mapping" tool. *See generally* Tabs 15g, 15h. Furthermore, Dell Federal supplied a "Letter of Authorization" that confirmed *Dell Corp.* "is an authorized reseller of Microsoft" software products and cloud services. *See id.* at 756. At the same time, Dell Federal included a letter confirming its status as an "authorized Licensing Solution Partner" ("LSP") for the Solicitation. *Id.* at 758.

After a brief competition, the Navy evaluated offers and awarded Dell Federal ESA II on May 14, 2026. *See id.* at 1944.

---

[1] "The Federal Supply Schedule program is also known as the GSA Schedules Program or the Multiple Award Schedule Program." *See* 48 C.F.R. § 8.402(a). GSA manages and directs the FSS program to simplify "obtaining commercial supplies and commercial services at prices associated with volume buying." *Id.*

## II. PROCEDURAL HISTORY

In June 2026, Minburn brought suit alleging, among other things, that the Navy arbitrarily and capriciously evaluated Dell Federal's offer. *See* Compl. After defendant shared the administrative record, Minburn filed its motion to supplement the administrative record and for judicial notice on July 27, 2026. ECF No. 33. Minburn also sought an expedited briefing schedule to resolve its motion which the Court granted. *See* Order Granting-In-Part and Denying-In-Part Mot. for Expedited Briefing, ECF No. 36. That same day, Minburn filed its first amended complaint which added a material misrepresentation claim levied against Dell Federal. *See* First Am. Compl., ECF No. 31 at ¶¶ 179–90.

A week later, Minburn moved for leave to file a second amended complaint which the Court granted. Mot. for Leave to File Second Am. Compl., ECF No. 38. Thereafter, defendant filed its response to Minburn's motion to supplement on August 6, 2026. *See* Def.'s Resp. Br., ECF No. 43. Dell Federal followed with its own response brief and also moved to dismiss Counts II and III in Minburn's operative complaint under RCFC 12(b)(6). *See* ECF No. 44. Minburn then filed its reply in support of its own motion and a response to Dell Federal's motion to dismiss on August 10, 2026. *See* Pl.'s Reply in Support & Resp. Br. to Mot. to Dismiss, ECF No. 45. Defendant did not file any responsive briefing in support of Dell Federal's motion to dismiss.

## III. LEGAL STANDARDS

### A. Motion to Supplement the Administrative Record.

In bid protest actions, "the focal point for judicial review should be the administrative record *already in existence*, not some new record made initially in the reviewing court." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (emphasis in original) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). However, a party may move to supplement the record to include materials "that were not considered by the agency" but "are nevertheless necessary to permit the Court's full evaluation of the agency's decision." *Can Softtech, Inc. v. United States*, No. 24-1009, 2026 WL 1288730, at *8 (Fed. Cl. Apr. 27, 2026). As a general rule, Courts limit the introduction of extra-record evidence to avoid turning APA review into *de novo* review. *Axiom*, 564 F.3d at 1380 (citing *Murakami v. United States*, 46 Fed. Cl. 731,735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). Therefore, supplementing the administrative record is appropriate when the existing record would "frustrate effective judicial review." *See id.*

While the United States Court of Appeals for the Federal Circuit has not defined what constitutes effective judicial review, this determination turns on the facts of each case. *See Naval Sys., Inc. v. United States*, 153 Fed. Cl. 166, 181 (2021). Indeed, the Court may admit new evidence "to ensure that the position of both parties is fully understood." *Id.* (quoting *FirstLine Transp. Sec., Inc. v. United States*, 116 Fed. Cl. 324, 326-27 (2014)). This includes material that allows a Court to "take a deeper dive into information that is already in the administrative record." *Id.* Put differently, a court may order defendant to supplement the record when it helps explain an agency's decision and to "otherwise correct mistakes and fill gaps in the record." *Can Softtech*, 2026 WL 1288730, at *8 (citing *Orion Int'l Techs. v. United States*, 60 Fed. Cl. 338, 343 (2004); *Pinnacle Sols., Inc. v. United States*, 137 Fed. Cl. 118, 130 (2018)). In sum, courts should order

supplementation record when it addresses the "ultimate question" in dispute. *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1332 (Fed. Cir. 2018).

Supplementation of the administrative record is also proper when a party "seeks to add 'information that was generated and considered by the agency' during the procurement but was omitted from the record filed with this Court." *See Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 398, 406 (2021) (quoting *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014)); *see also Can Softtech*, 2026 WL 1288730, at *8 (allowing supplementation for information "that by its very nature would not be found in the agency record."). "The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient." *Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50 (2018).

**B. Judicial Notice.**

Proceedings before the Court of Federal Claims are subject to the Federal Rules of Evidence ("FRE"). *See* 28 U.S.C. § 2503(b). Under the FRE, courts may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. of Evid. 201(b)(1)–(2). These facts must be adjudicative, not legislative and may be taken at any stage of litigation. Fed. R. Evid. 201(a), (d). "[W]hether to take judicial notice is a matter of discretion for this Court." *Pryde v. United States*, No. 15-878, 2018 WL 6397828, at *13 (Fed. Cl. Dec. 15, 2017) (citing *K/S Himpp v. Hear-Wear Techs., LLC*, 751 F.3d 1362, 1367 (Fed. Cir. 2014)).

Courts may take judicial notice "of government documents available from reliable sources." *Democracy Forward Found. v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 62 n.2 (D.D.C. 2019) (taking judicial notice of 2017 presidential executive order); *See Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) (collecting cases and noting that examples of reliable government sources include agency manuals, Congressional Research Department and State Department research reports, and trademark registration documents); *see also* 44 U.S.C. § 1507 (finding contents of documents filed to Federal Register warrant judicial notice). Judicial notice is also proper for information "made publicly available by government entities . . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010) (citing cases); *Maimon v. United States*, 175 Fed. Cl. 553, 557 n. 2 (2025); *Rice Servs., Inc. v. United States*, 180 Fed. Cl. 625, 633 (2026).

Still, courts must reconcile judicial notice of extra-record evidence with its standard of review. *Murikami v. United States*, 46 Fed. Cl. 731, 739 (2000). "In such circumstances, discretion to take judicial notice must be exercised sparingly lest Rule 201 be wielded to create an exception that would envelop the established procedures for conducting arbitrary and capricious review." *Id.*; *see Lussier v. Runyon*, 50 F.3d 1103, 1114 (1st Cir. 1995), *cert. denied*, 516 U.S. 815 (1995) (discussing that "judges may not defenestrate established evidentiary processes, thereby rendering inoperative the standard mechanisms of proof and scrutiny, if the evidence in question is at all vulnerable to reasonable dispute."). In doing so, other courts have declined to take judicial notice of facts on a government website subject to change or printouts of websites that lack reliability on

their face. *Connected Glob. Sols., LLC v. United States*, 160 Fed. Cl. 420, 425 (2022); *Kvichak Marine Indus., Inc. v. United States*, 118 Fed. Cl. 385, 388 (2014).

**C. Motion to Dismiss for Failure to State a Claim.**

A Court may dismiss a complaint under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). To survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[T]he court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009). A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. These factual allegations "must be enough to raise a right to relief above the speculative level" and "requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a plaintiff's standard "does not require detailed factual allegations, but it demands more than unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Bussie v. United States*, 96 Fed. Cl. 89, 95, *aff'd*, 443 F. App'x 542 (Fed. Cir. 2011) (quotations omitted).

## IV. DISCUSSION

Before the Court discusses the parties' arguments, it must disentangle Minburn's two distinct, but related, claims at issue. Minburn alleges in Count II that Dell Federal's FSS Price List did not contain all Microsoft products listed in Attachment 2 of the Solicitation. Second Am. Compl. at ¶¶ 141, 150–52. By failing to comply with this eligibility requirement, the Navy arbitrarily and capriciously evaluated Dell Federal's proposal. *Id.* In other words, Count II concerns *the Navy's* conduct. By contrast, Minburn's Count III claims that Dell Federal "falsely certified that all Microsoft products required by the Solicitation are found on its own FSS contract." ECF No. 33 at 8. Thus, Count III addresses *Dell Federal's* conduct.

In their briefing, the Navy and Dell Federal rely on the Federal Circuit's decision in *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320 (Fed. Cir. 2011) for support. ECF No. 43 at 8–11; ECF No. 44 at 7, 15. There, the court held that when "an offeror has certified that it meets the technical requirements of a proposal, the Contracting Officer is entitled to rely on such certification in determining whether to accept a bid." *Allied*, 649 F.3d at 1330. Along those lines, an "offeror's potential failure to comply with the proposal is ordinarily a matter of contract administration, which does not go to the propriety of accepting a bid." *Id.* (quotations omitted). That case answered whether an agency arbitrarily and capriciously evaluated a proposal, not a material misrepresentation claim. Defendant and Dell Federal use *Allied Tech* to rebut both of Minburn's claims. But given its scope, the Court finds *Allied Tech* to be inapposite toward Minburn's Count III.

Minburn first seeks to supplement the administrative record with "Standard Form Modifications" found in Dell Federal's FSS contract. ECF No. 33 at 2. Those modifications would "demonstrate (or not) the inclusion on Dell Federal's FSS Price List of the Microsoft products

required by the Solicitation." *Id.* at 5. Second, Minburn asks the Court to take judicial notice of the fact that Dell Federal's Price List published on GSAAdvantage.gov ("GSA Advantage") contains only 11 items listed in Solicitation Attachment 2.[2] Alternatively, Minburn moves for supplementing the record with a declaration from Ms. Kelly Nelson who discovered this finding. *See* Decl. of Kelly Nelson, ECF No. 32-1. Ms. Nelson's declaration describes how to search stock-keeping units ("SKU") on GSA Advantage and what her search of Dell Federal's online offerings yielded. *See generally id.*

### A. Minburn Has Set Forth Plausible Allegations to Warrant Supplementation of the Record for Its Material Misrepresentation Claim.

To start, Minburn requests supplementation of the record with standard form modifications from Dell Federal's GSA MAS contract. ECF No. 33 at 6–7. According to Minburn, "Dell Federal may be relying on Microsoft products supplied by one or more other entities in connection with this procurement." *Id.* at 7. The company also claims that it sufficiently alleged that "Dell Federal's certification that the products are found on its own FSS contract are false." *Id.* In opposition, Dell Federal observes that the record "disproves Minburn's unfounded allegations," which makes supplementation inappropriate. ECF No. 44 at 14. The Navy charges that Minburn's sought relief rests on "unsubstantiated allegations," and "grasp[s]" at straws to establish its material misrepresentation claim. ECF No. 43 at 7, 12.

Based on the parties' review of applicable case law, some concepts stand out. First, one court held that a protestor must assert plausible allegations that a material misrepresentation occurred to warrant supplementation of the record. *See Alaska Structures, Inc. v. United States*, 144 Fed. Cl. 80, 86 (2019). Another line of cases holds that protestors must demonstrate "more than innuendo or suspicion to entitle it" to discovery. *Advanced Mgmt.*, *Strategies Grp., Inc. v. United States*, 180 Fed. Cl. 1, 23 (2025) (citations omitted) (reaching this conclusion by drawing from other cases that asserted claims of bias and bad faith). And material misrepresentation claims often require extra-record evidence when "no one could reasonably expect [it] to be contained in the administrative record." *Golden IT*, *LLC v. United States*, 157 Fed. Cl. 680, 684 (2022).

This court addressed an analogous scenario in *Insight Pub. Sector, Inc. v. United States*, 157 Fed. Cl. 398 (2021) ("*Insight I*"). That case concerned the predecessor to the current award ("ESA I"), which Dell Marketing L.P. received. *Id.* at 405. To establish proof of "product inclusion on its GSA Schedule, Dell Marketing submitted an Excel file identified as 'a copy of the Microsoft Products on vendor's GSA" MSA contract and prices. *Id.* at 403–04. The plaintiff then moved to supplement the record with Dell Marketing's GSA Schedule "because it is necessary for determining Dell Marketing's compliance with the RFQ and eligibility for [the] award." *Id.* at 409. The court declined to supplement the record because the "too close at hand" doctrine did not apply and the administrative record lacked "any physical, legal, or logistical gaps." *Id.* at 409–14.[3] As a caveat, *Insight I* addressed the Navy's evaluation of Dell Marketing's offer, not a material misrepresentation claim.

---

[2] GSA Advantage "is an online shopping and ordering system that provides access to thousands and millions of supplies (products) and services." *See GSA Advantage*, GSA Vendor Support Center, https://vsc.gsa.gov/drupal/node/87, (last visited 8/10/2026).

[3] Minburn did not raise the "too close at hand" doctrine in its motion to supplement.

Minburn contends that the "standard" for supplementing a protestor's misrepresentation claim rests on asserting plausible allegations. ECF No. 33 at 5, 7. In essence, pleading requirements dictate this inquiry. That conclusion places the cart before the horse when courts decide whether to admit extra-record evidence. Indeed, Chief Judge Solomson's discussion in *GoldenIT* did not create a categorical rule that all material misrepresentation claims require extrinsic evidence. *See* 157 Fed. Cl. at 688 (supplementing the record "[g]iven the nature of Golden's misrepresentation argument."). Under those circumstances, any contractor could assert a claim for material misrepresentation and courts would rubber stamp their requests for supplementation. While some claims may require extra-record evidence, the Court must first answer whether the pre-existing record suffices to review Minburn's claim. *See Axiom* 564 F.3d at 1379–80. After careful consideration, the Court concludes that targeted discovery will be necessary to resolve Minburn's material misrepresentation claim.

To support Count III, Minburn takes issue with Dell Federal's certification that all products listed in Solicitation Attachment 2 are included on its GSA MAS contract. AR at 570. To demonstrate compliance, the Solicitation required offerors to provide "a copy of your GSA *approved* Price List." *Id.* at 573 (emphasis added). According to Minburn, Dell Federal's FSS *Authorized* Price List "does not include the products and services required for the ESA II BPA." ECF No. 33 at 5. Minburn cites Dell Federal's Cloud-Computing Services and Third Party Product Price Lists as evidence that Solicitation Attachment 2 items do not appear on Dell Federal's approved pricelist. AR at 705, 712. Instead of listing each product offered, Dell Federal represented that the lists would be available upon request. *Id.* On its own, the Court questions whether Dell Federal's intent to provide price lists by request means it misrepresented that those items are found on its GSA MAS contract. But when combined with other evidence, Minburn asserts a plausible material misrepresentation claim. ECF No. 45 at 2.

In addition to its Authorized FSS Price List, Dell Federal provided a copy of its GSA Microsoft product list and an associate mapping tool. *See* AR at Tab 15g, Tab 15h. While not attached to Dell Federal's Authorized FSS Price List, the company offered those spreadsheets to confirm that all items listed in Solicitation Attachment 2 are attached to Dell Federal's GSA Schedule. *Id.* at 590. By defendant's account, "[t]hat information is documented in the AR and is sufficient for the Court to effectively review Minburn's argument on the merits." ECF No. 43 at 9; *see also id.* at 9 n. 5 (using example to show that a certain SKU number from Solicitation Attachment 2 appears on Dell Federal's GSA Microsoft Price List). Dell Federal adds that "Minburn does not point to a single item in Solicitation Attachment 2 . . . that is not included in the Dell GSA Microsoft Price List or" the mapping document. ECF No. 44 at 19. Minburn notes that Dell Federal's "*ad hoc*" spreadsheets "are *not* Dell Federal's official, GSA-approved Price List." ECF No. 45 at 10 (emphasis added). The company further contends that "[t]here is no evidence that the products and prices listed on these unmarked spreadsheets were approved for Dell Federal's own FSS Price List." *Id.* At this point, the Court cannot determine whether Dell Federal pulled the Microsoft GSA price list directly from its GSA MAS contract. Without verification, these extraneous spreadsheets that appear outside Dell Federal's Authorized FSS Price List cannot resolve whether Dell Federal made a false certification. AR at 573; *see Alaska Structures*, 140 Fed. Cl. at 86 (supplementing the record based on an inconsistency between product literature and the solicitation).

Minburn also points to Dell Federal's letters of authorization as support for its material misrepresentation claim. ECF No. 33 at 6–7. One letter called "Letter of Authorization" lists Dell *Corp.*, not Dell *Federal*, as "an authorized Reseller of Microsoft" products and services. AR at 756. Another letter titled "Microsoft LSP Status Confirmation" states that Dell Federal "is an authorized" LSP and "is approved to provide Microsoft licensed offerings." *Id.* at 758. Given this discrepancy, Minburn believes that it plausibly alleged that "Dell Federal intends to rely on performance by an affiliate." ECF No. 45 at 11. Dell Federal notes that its letters "lack relevance to whether Dell's MAS contract price list includes all required products." ECF No. 44 at 16. Neither Dell Corp. nor the Navy explain why the Letter of Authorization lists Dell Corp. as being authorized to resell Microsoft products for purposes of the Solicitation.

At this stage, the Court addresses plausibility, not the merits of Minburn's claim. *See Alaska Structures*, 144 Fed. Cl. at 86. Dell Federal's Letter of Authorization "is substantively identical" to that of Minburn's and another offeror "and all are signed by the same Microsoft employee." ECF No. 33 at 6 (citing AR at 756, 820, 996). Since Dell operates through multiple affiliates, the Court finds it *plausible* that Dell Federal may be relying on other arms of its company to fulfill ESA II. Since it was offered as a letter of authorization, Minburn raises a reasonable inference that other entities within Dell's corporate structure could be assisting Dell Federal in performance. This allegation arises from record evidence, not self-serving testimony or "innuendo." *Advanced Mgmt.*, 180 Fed. Cl. at 23. Taken together, Dell Federal's insufficient FSS Pricelist and Letter of Authorization from Dell Corp. presents a plausible material misrepresentation claim.

As for the "Microsoft LSP Status Confirmation" letter, Minburn takes issue with language that authorized Dell Federal to provide "Microsoft licensed offerings under the specific licensing programs *within the specified territory or territories* identified on their signed *Program Designation Form(s)*." AR at 758 (emphasis added). Absent further explanation, Minburn questions whether this letter complies with the Solicitation's letter of authorization requirement. ECF No. 33 at 6–7. Minburn also submitted evidence that "shows that Dell Federal in fact is not an LSP." *Id.* at 7. Whether Dell Federal complied with the Solicitation's letter of authorization requirement remains separate from whether its GSA MAS contract contains all items listed in Solicitation Attachment 2. And challenging the propriety of Dell Federal's LSP confirmation letter strays too far from its material misrepresentation allegations. Nonetheless, Minburn cites sufficient evidence to warrant supplementation of the administrative record.

Insofar that defendant and Dell Federal claim that *Insight I* resolves this evidentiary dispute, that case did not concern a material misrepresentation claim. *See* 157 Fed. Cl. at 411 (distinguishing itself from *Alaska Structures*, in which the court supplemented the record based on a plausibly alleged material misrepresentation claim). As stated by Minburn, "its 'material misrepresentation' allegation is not tethered to the four corners of Dell Federal's quotation or the existing record." ECF No. 45 at 16. Thus, the standard form modifications "may be the *only* documents capable of proving or disproving" whether Dell Federal's GSA MAS contract contains all items listed in Solicitation Attachment 2. ECF No. 45 at 8 (emphasis in original).

Therefore, the Court orders the Navy to supplement the record with portions of Dell Federal's standard form modifications so the Court may effectively review Count III.

**B. Minburn's Finding Regarding Dell Federal's Online Price List Does Not Warrant This Court to Take Judicial Notice nor Supplement the Record.**

Next, Minburn requests that the Court take judicial notice "of the basic fact" that Dell Federal's Price List published on GSAAdvantage.gov "features only 11 of the hundreds of items listed in Solicitation Attachment 2." ECF No. 33 at 7. According to Minburn, this fact will help establish Counts II and III in its complaint. *Id.* Should the Court refuse to take judicial notice, Minburn also moves to supplement the administrative record with Ms. Nelson's declaration. *Id.*

In response, Dell Federal contends that Minburn's proposed finding does not qualify as a readily verifiable fact. ECF No. 44 at 19. Dell Federal also describes Ms. Nelson's affidavit as "biased out-of-court testimony that purports to summarize the content of electronic material." *Id.* at 20. The Navy echoes Dell Federal's sentiments that GSA Advantage is "a complex and fluid database" not subject to judicial notice. ECF No. 43 at 14. Defendant also argues that Minburn attempts to "evade the standards for supplementation of the administrative record" by requesting judicial notice. ECF No. 43 at 13. Upon review, the Court declines to take judicial notice or supplement the administrative record with Ms. Nelson's finding.

It remains well-settled that Courts may take judicial notice of facts from government records, including those found on the Internet. *See Mobility Workx*, 15 F.4th at 1151. Yet, many of those agency reports, executive orders, and general website materials involve static information that is not subject to rapid change. *Id.*; *see also Confidential Informant 59-05071 v. United States*, 134 Fed. Cl. 698, 721 (2017), *aff'd*, 745 F. App'x 166 (Fed. Cir. 2018) (taking judicial notice of report found on the Department of Treasury's website); *Liu v. United States*, 93 Fed. Cl. 184, 191 n. 7 (2010) (finding judicial notice was proper for United States Postal Service hours of service listed on its website); *Rice Servs., Inc. v. United States*, 180 Fed. Cl. 625, 633 (2026) (permitting judicial notice of facts on West Point's website). Other examples of facts courts take judicial notice of include "definitions in dictionaries and encyclopedias; the outcome of previous judicial decisions; and addresses of government buildings." *Big Easy Studios, LLC v. United States*, 147 Fed. Cl. 539, 547 (2020).

When compared to the above examples, Minburn's proposed fact does not satisfy the criteria for judicial notice. Dell Federal's Price List published on GSA Advantage notes that "due to the volume of SKU's it is sometimes difficult to find a particular SKU." *See* GSA Advantage Authorized Federal Supply Schedule Pricelist at 71, https://www.gsaadvantage.gov/ref_text/47QTCA22D003G/1128JV.3WSLEJ_47QTCA22D003G_47QTCA22D003G-5-19-2026-393112.PDF (last visited Aug. 13, 2026). Indeed, "[GSA]Advantage may be slightly out of date at times as a result of occasional issues with the EDI upload." *Id.* Due to the size and "rapidity in which pricing changes, Dell does not publish a hard copy list." *Id.*[4] Thus, Dell Federal's own representations raise doubts about the accuracy of GSA Advantage. Fed. R. Evid. 201(b)(2); *see also* ECF No. 43 at 13. The Court cannot verify Minburn's finding without undertaking significant effort to compare Dell Federal's GSA Advantage price list "with Solicitation Attachment 2 or the materials in Dell's quotation." ECF

4 Dell Federal's Solicitation materials also address this issue. *See* AR at 696.

No. 44. At 19. In this instance, the Court will not verify whether hundreds of product offerings appear on a database that updates regularly on Minburn's behalf. ECF No. 43 at 13.

This matter differs from another court's decision to perform its own database search before taking judicial notice. *See Focus Revision Partners v. United States*, 151 Fed. Cl. 711, 726 n. 23. Although an offeror's SAM registration status may change just like a price list or other government materials, the parties dispute GSA Advantage's accuracy and how readily verifiable Ms. Nelson's conclusions are. *Compare id.*; *with* ECF No. 43 at 14; ECF No. 44 at 19. Minburn attempts to argue that neither defendant nor Dell Federal raised arguments to reflect "a genuine factual *dispute*." ECF No. 45 at 19. However, defendant and Dell Federal's *dispute* does not arise from the proposed fact itself, but rather the source in which Minburn discovered its finding. *See* ECF No. 43 at 14; ECF No. 44 at 19. Therefore, the Court declines to take judicial notice of Minburn's proposed fact.

The Court also refuses to supplement the administrative record with Ms. Nelson's declaration. Minburn regurgitates its assertion that regulations mandated Dell Federal to publish its full pricelist on GSA Advantage. *See* ECF No. 33 at 5–6; ECF No. 45 at 6–7; *see also* ECF No. 32 at 25; Second Am. Compl. at ¶¶ 145–48. Minburn does not appear to argue that Dell Federal's purported violations serve as a basis for relief.[5] The Court disagrees with the Navy that Ms. Nelson's declaration "is irrelevant to the question before the Court," but it does find that her testimony does not lend itself toward effective judicial review. ECF No. 43 at 14; ECF No. 44 at 19. Count II asks the "ultimate question" of whether the Navy arbitrarily and capriciously evaluated Dell Federal's proposal. *AgustaWestland*, 880 F.3d at 1332. Count III asks whether Dell Federal "falsely certified" that all "all products listed in Attachment 2 are currently included on" its GSA MAS contract. AR at 570. While GSA Advantage provides means for online access to a contractor's price list, it "is not dispositive of whether they are on Dell Federal's GSA contract." ECF No. 43 at 14.

In a subsequent opinion, *Insight* addressed a similar situation in which "Dell Marketing purportedly did not have the required products on its GSA schedule." *Insight Pub. Sector, Inc. v. United States*, 161 Fed. Cl. 760, 789 (2022) ("*Insight II*"). There, the plaintiff "failed to present evidence that other contractors produced their full GSA Schedule" on GSA Advantage. *Id.* at 790. Defendant also pointed out that other Microsoft LSPs "do not list *any* Microsoft products on the GSA Advantage website." *Id.* (emphasis in original). Here, Minburn finds *Insight II* distinguishable because it proved that "Dell Federal *was required by regulation*" to publish its entire price list. ECF No. 45 at 13 (emphasis in original). But the solicitation in that case required such a search on GSA Advantage. *See Insight II*, 161 Fed. Cl. at 789–90. Since GSA Advantage acts as one medium through which contractors publish their products from their GSA MAS contracts, it does not address whether those products appear on the *actual* contracts. Thus, Minburn's finding will not help the Court answer the ultimate questions presented by Counts II and III.

Therefore, the Court denies Minburn's request to take judicial notice or supplement the administrative record regarding its proposed finding of Dell Federal's price list on GSA Advantage.

---

[5] *See United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in judgment) (discussing that "points not argued will not be considered.").

### C. Minburn Has Sufficiently Pled Counts II and III to Survive Dismissal for Failure to State a Claim.

While opposing Minburn's motion to supplement, Dell Federal moved to dismiss Counts II and III for failure to state a claim. *See* ECF No. 44 at 9–14. Although the Court ordered defendant to supplement the administrative record, it addresses Dell Federal's arguments.

First, Dell Federal alleges that Minburn failed to plead Counts II and III with particularity as required under RCFC 9(b). *Id.* at 9–10. A couple of courts have discussed Rule 9(b) involving misrepresentation as an element to a claim. *See Exergen Corp. v. Wal-Mart Stroes, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009) (finding that equitable misconduct claim, which includes misrepresentation claim, must be pled in accordance with Rule 9(b)); *Kenney Orthopedic, LLC v. United States*, 107 Fed. Cl. 85, 92 (2012) (stating that inducement claim by misrepresentation face heightened pleading standards). But as Minburn notes, Dell Federal has not pointed to any case discussing a material misrepresentation claim and Rule 9(b). ECF No. 45 at 17. Without more, the Court will not impose a heightened pleading standard on material misrepresentation claims in bid protests. *See id.* at 17 n. 7 (noting that Minburn established the circumstances surrounding Dell Federal's purported material misrepresentation).

Next, Dell Federal claims that Minburn presented "untimely challenges" to the terms of the Solicitation. *Id.* at 11. By failing to object that the Solicitation "does not require the Agency to obtain or review GSA MAS contract prices lists, much less compare an offeror's proposal against the GSA contract price list," Minburn waived these allegations. *Id.* at 11–12; *see Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). However, Minburn challenges Dell Federal's compliance with the Solicitation, not its terms. ECF No. 45 at 18. Lastly, Dell Federal argues that Minburn's discussion of its purported obligation to publish its complete FSS Price List on GSA Advantage fails to state a claim. ECF No. 44 at 12. Dell Federal further argues that even if it violated FAR, its omissions do not establish a material misrepresentation claim. *Id.* Since Minburn concedes that it does not assert regulatory violations under FAR 8.402(b) and 55.238-77, the Court need not address this issue further. *See* ECF No. 45 at 18.

Therefore, since Minburn properly alleged Counts II and III, the Court denies Dell Federal's motion to dismiss for failure to state a claim.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART and DENIES-IN-PART** Minburn's motion to supplement the administrative record and for judicial notice, ECF No. 33. The Navy is **ORDERED** to supplement the administrative record with Dell Federal's standard form modifications to its GSA MAS contract. Additionally, the Court **DENIES** defendant's motion to dismiss for failure to state a claim, ECF No. 44. The parties are directed to **FILE** a joint status report that proposes redactions to make this Opinion public on or before **August 27, 2026**.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge